**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:09-CV-264**

| | | |
|---|---|---|
| **JEFFREY T. LEARDINI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **CHARLOTTE-MECKLENBURG** | ) | |
| **BOARD OF EDUCATION and** | ) | |
| **KAY CUNNINGHAM, in her individual** | ) | |
| **and official capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

       **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment

[D.I. 14], Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment

[D.I. 22], and Defendants' Reply [D.I. 26]. The Court denied the Defendants' Motion on the

basis of their statute of limitations argument on March 29, 2011 [D.I. 31]. For the reasons laid

out below, the Defendants' Motion for Summary Judgment on their substantive claims is

**DENIED**.

## I. Background

       Plaintiff was a sixth grade teacher with the Charlotte-Mecklenburg school system

("CMS"). Plaintiff began teaching elementary school with CMS in 1998. Plaintiff earned tenure

with CMS in 2002, after four full years of teaching. In 2005, Plaintiff applied and was accepted

to teach sixth grade language arts at a new CMS middle school, Community House. Two to

three weeks into the 2005-2006 school year, two female sixth grade students complained that the

Plaintiff was touching them (rubbing their shoulders, putting his hand on their heads, squeezing

their rib cages) and making them feel uncomfortable.  Plaintiff's principal, Gif Lockley,

expressed these concerns to Plaintiff and Plaintiff apologized to the students.

On April 26, 2006, four students complained that Plaintiff was touching them and

making them feel uncomfortable.  These four students approached the school's guidance

counselor, Erica Mark, about the touching incidents and were subsequently interviewed by

school officials.  The guidance counselor notified the principal, Gif Lockley, who in turn notified

Kay Cunningham, the CMS Employee Relations Specialist assigned to Community House.  The

disputes in this lawsuit concern the meeting that took place on April 27, 2006 between the

Plaintiff and Ms. Cunningham and related follow up between the parties.

During the meeting between the Plaintiff and Cunningham, at which Erica Mark was

also present, Cunningham explained some students had made allegations of inappropriate

touching against the Plaintiff.  Cunningham questioned Plaintiff about the specific allegations,

some of which he admitted (putting his hand on students' shoulders, picking up a student,

sending personal instant messages with students when the students initiated the contact) and

some of which he denied (snapping a student's bra strap, rubbing a student's thigh, placing his

hand on a student's thigh).  Plaintiff alleges that Cunningham informed him that CMS

maintained a "no-touch" policy, and his admissions made him subject to termination.

Cunningham gave Plaintiff three options in light of the accusations and his admissions: (1)

suspension with pay, pending an investigation by law enforcement; (2) resign effective

immediately; or (3) resign effective the end of the school year.  Plaintiff asserts Cunningham

told him there were unlikely to be circumstances under which he would keep his job if he chose

suspension with pay, and that if he resigned, he could do so "in lieu of" a law enforcement

investigation.  Additionally, his record would not show he was terminated for cause.

Plaintiff decided to resign effective the end of the year in order to receive his salary through the end of the school year and not undergo an investigation or have a termination on his record. Cunningham gave Plaintiff a resignation form to fill out, which he signed. Plaintiff checked "job dissatisfaction" as his reason for leaving and put June 14, 2006 as the date he wished to resign. Cunningham had the authority to accept an employee's resignation. After Plaintiff signed the form, Cunningham left the room. During her absence, Plaintiff spoke with Mary McCray, the teacher representative at Community House for CMAE, an employee association. He explained the situation to her and she advised him to rescind his resignation and request suspension with pay, which would require CMS to prove the allegations against him. Plaintiff claims that when Cunningham returned, he requested to rescind his resignation and she refused to allow him to do so. Cunningham claims that she does not recall the Plaintiff making such a request, and that she did not have the authority to allow Plaintiff to rescind his resignation; any such request would have had to go through Plaintiff's principal, Gif Lockley.

Plaintiff was escorted off the property after the completion of the meeting. On May 1, 2006, Cunningham called him to tell him that CMS would not be able to pay him through the end of the school year. Plaintiff claims he reiterated his desire to rescind his resignation if that were the case. Cunningham told him she would call him back regarding his proposal; the next day, she left a message that CMS would pay him through the end of the school year.

Plaintiff filed suit on March 6, 2008 in Mecklenburg County Superior Court, alleging violations of federal law under 42 U.S.C. § 1983 and state law violations of tortious interference with contract, fraud and negligence. Defendants removed the case to federal court on April 7, 2008. On June 9, 2008, the Parties stipulated to a voluntary dismissal without prejudice. Plaintiff then filed the current action on June 3, 2009 [D.I. 1] in Mecklenburg County Superior

Court, alleging identical claims from the 2008 action.  Defendants removed the case to this Court

and filed their Answer on July 1, 2009 [D.I. 3].  The Court denied the portion of Defendants'

Motion for Summary Judgment alleging that Plaintiff's claims were barred by the statute of

limitations.  [D.I. 31].  Defendants now argue there is no genuine issue of material fact as to

Plaintiff's claims.

## II.  Summary Judgment Standard

"Under the Federal Rules of Civil Procedure, summary judgment shall be awarded 'if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits . . . show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  Bouchat v. Baltimore Ravens Football Club,

Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of

material fact exists if a reasonable jury, considering the evidence, could return a verdict for the

non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

seeking summary judgment bears the initial burden of demonstrating the absence of a genuine

issue of material fact.  Celotex Co. v. Catrett, 477 U.S. 317, 325 (1986).  If this showing is made,

the burden then shifts to the non-moving party.  Bouchat, 346 F.3d at 519.  A party opposing a

properly supported motion for summary judgment "may not rest upon the mere allegations or

denials of [her] pleadings," but rather must "set forth specific facts showing that there is a

genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586

(1986); Fed. R. Civ. P. 56(e).

## III. Plaintiff's Claims

### A. Violation of Procedural Due Process

To maintain a procedural due process claim, "a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, . . . and that he has been deprived of that protected interest by some form of state action[.]" Stone v. Univ. of Maryland Med. Sys., 855 F.2d 167, 172 (4th Cir. 1988). In Stone, the court found that the plaintiff unquestionably had a property interest in his continued employment. Id. As Defendants here acknowledge, with career status, the Plaintiff had a right to written notice and a hearing prior to any dismissal. Defendants' Memorandum of Support of their Motion for Summary Judgment at 13. The primary question in Stone, like the case at bar, was whether the plaintiff's resignation from his employment was voluntary. If the resignation is voluntary, the plaintiff has "relinquished his property interest voluntarily and thus cannot establish that the state 'deprived' him of it within the meaning of the due process clause." Id. at 173. To be involuntary, the resignation must be so involuntary so as to amount to a "constructive discharge." Id.

The Fourth Circuit laid out a two circumstances under which an employee's resignation is involuntary: "(1) where obtained by the employer's misrepresentation or deception, and (2) where forced by the employer's duress or coercion." Id. at 174 (internal citations omitted). A resignation may be involuntary under the misrepresentation prong if the employee reasonably relied on the employer's misrepresentation of a material fact concerning the resignation. Id. "A misrepresentation is material if it concerns either the consequences of the resignation or the alternative to the resignation. The reliance must be reasonable under the circumstances." Id. A resignation may be involuntary under the duress prong if the employer's conduct, when viewed in light of all the circumstances, effectively took away the employee's free choice as to his or her

resignation. Id. Appropriate factors for courts to consider are "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether he was permitted to select the effective date of resignation." Id. Particularly pertinent here, the Fourth Circuit cautioned that an unpleasant choice, such as that between resignation or facing possible legal or disciplinary action, does not equal duress or coercion. Id.

In Stone, the Circuit found that the plaintiff met neither of the standards for involuntary resignation. First, the court concluded that even if misrepresentations had been made to the plaintiff during discussions of his resignation, he had not reasonably relied upon them because of his years of experience as both a physician and an administrator and his familiarity with the hospital bylaws in question. Second, the Court did not find plaintiff's argument that he experienced duress because he was forced to make the decision in an expedited fashion while upset compelling. "[T]he mere fact that Stone was forced to choose between the inherently unpleasant alternatives of resignation and possible termination for cause does not itself mean that his resignation was submitted under duress, absent evidence that his superiors lacked good cause for the threatened termination." Id. at 177. The court noted that the plaintiff did make the decision under time pressure and without the advice of counsel, which under different circumstances may be sufficient to raise a genuine issue of material fact as to voluntariness. In Stone, though, the plaintiff was sophisticated, knew of the hospital policies, and firmly negotiated his resignation date and other benefits with regard to his resignation package. "Under [those] circumstances, [the court] had no difficulty in concluding that his resignation represented a carefully considered choice between two unpleasant alternatives, and was therefore, as a matter of law, not an involuntary one amounting to a deprivation of property." Id. at 177-78.

In applying the analysis of <u>Stone</u> to the matter before us, there is a genuine issue of material fact as to whether Cunningham made a material representation to the Plaintiff upon which he reasonably relied. The Plaintiff claims that Cunningham told him if he resigned rather than taking suspension without pay, he would not face a police investigation, that he would be paid until the end of the year, and that his record would reflect he resigned because of job dissatisfaction. Besides being paid through the end of the year, over which the parties disputed but which CMS eventually did, none of these assertions were true. If Cunningham did in fact make the alleged statements, they constitute a material misrepresentation upon which the Plaintiff could reasonably rely. The statements concerned both the consequences of the resignation (no law enforcement investigation and pay through the end of the year) and the alternatives to resignation (suspension with pay would result in a law enforcement investigation and Cunningham did not foresee any possibility of Plaintiff teaching again). The Plaintiff here is not the sophisticated party present in <u>Stone</u>, who was necessarily familiar with his rights as to resignation. Though Defendants contend the CMS policies as to resignation and suspension were listed on their website, there is no indication in the record that those policies were available to Plaintiff while he was making his decision or that Plaintiff knew of said policies. Defendants also argue that there is no evidence of reasonable reliance on Cunningham's alleged misstatements. The Court disagrees. Plaintiff filled out his resignation form and checked "job dissatisfaction" as the reason for his departure, and put his resignation date as June 14, 2006 (the end of the year, and not the date these events occurred). This is sufficient evidence to raise a genuine issue of material fact as to Plaintiff's reasonable reliance on Cunningham's statements. Whether Cunningham made the statements is a matter for a jury to decide. This case is a classic case of he said/she said, in which much of the determination comes down to credibility of the

7

witnesses.  Assessing the credibility of witnesses is clearly a job for the jury.  There is a genuine

issue of material fact as to whether the Plaintiff's resignation was voluntary because of a

material misrepresentation.

The Defendants' argument that Plaintiff was not deprived due process when he failed to

ask for a hearing is also uncompelling.  As Plaintiff points out, the Stone court made clear that if

pre-deprivation process is possible, it is due.  See id. at 172, n. 4.  Plaintiff's federal due process

claim survives summary judgment. [1]

Based on the analysis above, the Court finds Cunningham is not entitled to qualified

immunity.  As Defendants point out, "[i]n determining whether Kay Cunningham is entitled to

qualified immunity, a court decides whether the rights asserted by Plaintiff were 'clearly

established in a particularized and relevant sense' such that the unlawfulness of Cunningham's

conduct would have been 'apparent' in light of the existing law."  Defendants' Reply Brief at 13

(quoting Zepp v. Rehrmann, 79 F.3d 381, 387 (4th Cir. 1996)).  To put it another way, the

question is whether the alleged conduct violated clearly established law and whether a

reasonable person would have known of the established law.  See Zepp, 79 F.3d at 385; see also

Brockington v. Boykins, ---F.3d.---, 2011 WL 989557 at *2 (4th Cir. 2011).  The Plaintiff has

carried his burden in establishing a genuine issue of material fact exists as to Cunningham's

alleged misrepresentations.  If Cunningham did in fact make material misrepresentations to the

Plaintiff, particularly if she knew them to be false, Cunningham violated clearly established law

on both the federal and state levels. A reasonable person in her position should know that

---

[1] Having found that Plaintiff's claim survives summary judgment on the basis of material
misrepresentation, the Court finds it unnecessary to examine Plaintiff's claim under the duress test set out in
Stone.  The Court acknowledges that the duress totality of the circumstances test would be a more difficult
test for Plaintiff to meet, but also notes that Plaintiff's argument that his alleged attempt to rescind his
resignation is evidence that he was under duress is compelling.

material misrepresentations as to the Plaintiff's livelihood violate clearly established law. Qualified immunity is therefore denied.

For the same reasons, the Court finds it appropriate to deny summary judgment as to the Plaintiff's official capacity claim against Cunningham (which is in reality a claim against the Board itself). The parties agree that a municipality is not liable for section 1983 violations under a vicarious liability theory. See Zepp, 79 F.3d at 385. "Municipal liability for § 1983 exists only where a deliberate choice to follow a course of action is made by the official responsible for establishing final policy with respect to the subject matter at issue." Morrash v. Strobel, 842 F.2d 64, 67 (4th Cir. 1987). A municipality may be liable under § 1983 for "even a single decision by a municipal policymaker." Id. As with all the other issues in this case, there is very little evidence besides the testimony of the parties. Though the Court harbors doubts as to whether the Plaintiff will be able to establish municipal liability at trial, viewing the evidence in the light most favorable to the Plaintiff, there is a material issue of fact as to whether Kathy Auger, the head of Human Resources, knew of Plaintiff's request to rescind his resignation and refused it, and whether she had final authority on the matter. Summary judgment is therefore appropriately denied as to the Plaintiff's federal law claims.

## B. State Law Claims

Defendants argue and Plaintiff does not object that the state law claims are solely against Ms. Cunningham in her individual capacity. Defendant's Memorandum of Law in Support of their Motion for Summary Judgment at 20.

The Plaintiff has lodged claims of tortious interference with contract, fraud and negligence. The summary judgment request for these state law claims fails for the same reason as the federal claim. With a scant factual record, much of this case comes down to credibility of

witnesses, which is for the jury to decide. As to tortious interference, whether Cunningham intentionally induced the Plaintiff's resignation is a factual question for a jury. As to fraud, it is a jury question as to whether Cunningham had an intent to deceive the Plaintiff, particularly in light of CMS' bad publicity with regard to another inappropriate touching case, as discussed in Plaintiff's briefing. Plaintiff's Response, Exhibit 8. As to negligence, there is a genuine issue of material fact as to what Cunningham allegedly represented to Plaintiff and whether those actions rose to a breach of her job duties.

For the reasons laid out herein, the Defendants' Motion for Summary Judgment is **DENIED**.


Signed: April 19, 2011

Graham C. Mullen
United States District Judge